UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-61195-CIV-DIMITROULEAS

ANDRES GOMEZ,

    Plaintiff,
vs.

LA CARRETA ENTERPRISES INC.,

    Defendant.
_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT</u>**

THIS CAUSE is before the Court on the Motion to Dismiss Amended Complaint with Prejudice [DE 27] ("Motion"), filed herein on November 1, 2017. The Court has carefully reviewed the Amended Complaint [DE 26], the Motion [DE 27], Plaintiff's Response in Opposition [DE 28], Defendant's Reply [DE 29], and is otherwise fully advised in the premises.

**I.     Background**

Plaintiff Dennis Hayes is visually impaired. Defendant runs a chain of Cuban restaurants located throughout South Florida. Plaintiff brought this suit against Defendant La Carreta Enterprises, Inc. for allegedly violating Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, by owning and operating a website inaccessible to persons who are visually impaired. Title III makes it unlawful to discriminate against disabled persons in the full and equal enjoyment of public accommodations. *Id.* § 12182(a). As an advocate for persons with disabilities, Gomez serves as a "tester" who files lawsuits against entities that maintain websites he believes are not compliant with the ADA's requirements.

Plaintiff utilizes JAWS Screen Reader software that enables him to read computer materials and access the Internet. Defendant runs the website www.lacarreta.com ("lacarreta.com").  According to Plaintiff, he attempted to access and use the lacarreta.com, but

was unable to since it does not interface with his screen reader software. His complaint seeks declaratory and injunctive relief to make lacarreta.com accessible to persons with visual impairments.

The Court previously dismissed Plaintiff's Complaint [DE 1] for failure to state a claim upon which relief can be granted. *See* [DE 25]. Plaintiff was given an opportunity to amend the Complaint "to adequately allege that lacarreta.com has impeded his access to Defendant's physical restaurants." *Id.* at 7. Defendant has moved to dismiss the Amended Complaint, arguing that it suffers from the same deficiencies that necessitated dismissal of the Complaint. The Court agrees.

### III.  Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that asserts mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And "on the assumption that all the allegations are true (even if doubtful in fact)," the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "The Supreme Court has employed a 'two-pronged approach' in applying the foregoing principles: first, a reviewing court should eliminate any allegations in the complaint that are merely legal conclusions; and second, where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 679).

**IV.    Discussion**

Title III of the ADA prescribes, as a "[g]eneral rule":

> No individual shall be discriminated against on the basis of
> disability in the full and equal enjoyment of the goods, services,
> facilities, privileges, advantages, or accommodations of any place
> of public accommodation by any person who owns, leases (or leases
> to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).   To state a claim for relief under Title III, a plaintiff must plausibly allege, first, that he is disabled within the meaning of the ADA; second, that the defendant is a private entity that owns, leases, or operates a place of public accommodation; and, third, that because of his disability the plaintiff was denied full and equal enjoyment of the public accommodation by the defendant. *Gomez v. Bang & Olufsen America, Inc.*, No. 16-cv-23801, 2017 WL 1957182, at *2 (S.D. Fla. Feb 2, 2017); *see Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015) (per curiam); *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 674 (9th Cir. 2010); *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015)

(per curiam); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (per curiam).

Title III sets forth a "comprehensive definition of 'public accommodation,'" *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 667 (2001), in which a private entity is covered "if the operations of such entit[y] affect commerce" and the entity fits into one of the statute's 12 enumerated sets of categories.[1]  *See* 42 U.S.C. § 12181(7).[2]

The ADA delegates authority to the Attorney General to issue regulations to carry out the provisions of Title III. *See id.* § 12186(b). However, rules concerning website accessibility have yet to be promulgated, and to date, neither the Supreme Court nor any of the Circuit Courts of Appeal have addressed the issue head on.   It should be noted, however, that resolving the more basic question of whether Title III even applies beyond physical spaces and into cyberspace requires the Court to "wad[e] into a thicket of a circuit split."  *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1334 (11th Cir. 2004).   Decisions of the Third, Fifth, Sixth, and Ninth Circuits suggest that Title III's coverage is limited to physical spaces.  *See Ford v.*

---

1 Title III covers the following entities:
>  (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>  (B) a restaurant, bar, or other establishment serving food or drink;
>  (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>  (D) an auditorium, convention center, lecture hall, or other place of public gathering;
>  (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>  (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
>  (G) a terminal, depot, or other station used for specified public transportation;
>  (H) a museum, library, gallery, or other place of public display or collection;
>  (I) a park, zoo, amusement park, or other place of recreation;
>  (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>  (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
>  (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7)(A)-(L).
2 Congress has the power to amend this statute by explicitly including websites among the enumerated categories. The Court does not have this legislative power.

*Schering-Plough Corp.*, 145 F.3d 601, 613-14 (3d Cir. 1998); *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534-36 (5th Cir. 2016), *cert. denied*, 2017 WL 4339924 (U.S. Oct. 2, 2017); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114-15 (9th Cir. 2000).  By contrast, the First, Second, and Seventh Circuits have held that Title III does not always require a connection to a physical space.  *See Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 18-20 (1st Cir. 1994); *Pallozi v. Allstate Life Ins. Co.*, 198 F.3d 28, 31-33 (2d Cir. 1999); *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001).

The Eleventh Circuit has charted a middle path.  In *Rendon v. Valleycrest Productions, Ltd.*, a telephone selection process that allegedly screened out disabled contestants from aspiring to compete on the show *Who Wants To Be a Millionaire?* was covered by Title III. 294 F.3d 1279 (11th Cir. 2002).  In reaching this conclusion, the Court reasoned that the ADA's plain text "reveals that the definition of discrimination provided in Title III covers both tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, and intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."  *Id.* at 1283 (citations omitted).  Though *Rendon* concluded that Title III extends to non-physical spaces, it does not establish that a virtual space like a website is necessarily covered, especially when the claimed denial of equal access is altogether unmoored from a physical space.

> District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that the ADA does not apply to a website that is wholly unconnected to a physical location.  However, district

> courts in the Eleventh Circuit have found that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation.

*Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1320 (S.D. Fla. 2017) (citations omitted). *See., e.g., Bang & Olufsen*, 2017 WL 1957182, at *4 ("[T]he ADA does not require places of public accommodations to create full-service websites for disabled persons.  In fact, the ADA does not require a place of public accommodation to have a website at all.  All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-motar [*sic*] store.").

Here, upon a careful review of the allegations in the Amended Complaint, Plaintiff does not adequately allege that his inability to access lacarreta.com impedes his access to enjoy the physical restaurant.  Rather, Plaintiff alleges that his inability to use lacarreta.com prevented him from being able to gain information about the restaurant, such as location, "hours of operation, and menus including daily specials, and . . . information concerning political events occurring at particular restaurants." [DE 26 ¶ 8]. This ground, without more, is insufficient to state a claim.

Courts in this district require the website to provide more than information about a defendant's business in order to state a claim under the ADA for website inaccessibility. *Compare Kidwell v. Florida Comm'n on Human Relations*, No. 2:16-CV-403-FTM-99CM, 2017 WL 176897, at *5 (M.D. Fla. Jan. 17, 2017) ("Plaintiff is unable to demonstrate that either Busch Gardens' or SeaWorld's online website prevents his access to 'a specific, physical, concrete space such as a particular airline ticket counter or travel agency.'") (citation omitted); *Bang & Olufsen*, 2017 WL 1957182, at *4 (plaintiff's "grievances are wholly unconnected to any harm he actually suffered at the place of public accommodation (i.e. the concrete, physical store) and are therefore insufficient to survive a motion to dismiss."); *with Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d

1315, 1321 (S.D. Fla. 2017) (motion to dismiss denied where plaintiff alleged that defendant Winn–Dixie's website allows customers to locate physical Winn–Dixie store locations *and* fill and refill prescriptions for in-store pick-up or delivery); *Gomez v. J. Lindeberg USA, LLC*, No. 16–22966, at 2–3 (S.D. Fla. Oct. 17, 2016) (finding that plaintiff stated a claim under the ADA by alleging inaccessibility of defendant's website prevented him from searching for defendant's physical clothing store locations and from purchasing defendant's clothing online).

Businesses are not required to have websites. If a business has a website, it cannot impede a disabled person's full use and enjoyment of the physical space the business occupies. Nearly all websites associated with a physical business location provide information about location, hours, and goods and services provided by the business. Some of these websites do not interface with screen readers. If the Court allows ADA accessibility claims to proceed for these websites under a theory that a visually impaired plaintiff was denied access to *information* about the physical business location, then this Court would be saying, in effect, that *all* websites must interface with screen readers. The Court is not willing to take that leap because it would eviscerate the framework established by district courts within the Eleventh Circuit construing *Rendon.*

Plaintiff has not plausibly alleged that the inaccessibility of lacarreta.com has impeded his access to the physical location, so the Amended Complaint is dismissed. Rule 15 says that courts "should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). Despite this generally permissive approach, a district court need not grant leave to amend where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed"; (2) "allowing amendment would cause undue prejudice to the opposing party"; or (3) the "amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir.2001) (per curiam). Plaintiff's Amended Complaint is dismissed with prejudice because

Plaintiff's initial Complaint was dismissed on identical grounds, and the Amended Complaint failed to cure the defect explained in the Court's previous dismissal Order. *See* [DE 25].

**V.   Conclusion**

For the reasons stated, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [DE 27] is **GRANTED**. Plaintiff's Complaint [DE 26] is **DISMISSED with prejudice**. The Clerk is directed to **CLOSE** this case and **DENY** any pending motions as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 6th day of December, 2017.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record